IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MID-CENTURY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | NO. 2:23-cv-52 |
| MID-AMERICA MENTAL HEALTH LLC, et al., | ) ) ) ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

This is a declaratory judgment action in which Mid-Century Insurance Company seeks a declaration that it has no duty to defend or indemnify Daud Rashidi or Mid-America Mental Health, LLC against the claims made by Jane Doe in state court. Doe alleges in the underlying lawsuit that Rashidi committed multiple sexual assaults on her while she was being treated by him and in the care of Mid-America. Mid-Century issued a business owners' policy of insurance to Mid-America, and the Policy contained an "Abuse or Molestation Exclusion" for injuries arising from the abuse or molestation while in the care or control of any insured. Mid-Century seeks summary judgment [DE 21], principally on the grounds that the "Abuse or Molestation" exclusion precludes coverage. I agree that the language of the exclusion is unambiguous and leaves little room for doubt that Mid-Century Insurance owes no duty to defend or indemnify Mid-America Mental Health LLC or Rashidi against the claims made against them by Jane

Doe. Summary judgment will therefore be granted to Mid-Century Insurance.

## Factual Background

The facts, as alleged, are rather grim. Jane Doe was a patient of Mid-America Mental Health LLC from approximately February 2018 to June 2020 for treatment of opioid dependence. [Response to Stmt. of Undisputed Facts, DE 33 at 1.] During this time, she had appointments at Mid-America about every two weeks for follow ups and to get refills for her suboxone medication. [*Id.* at 1-2.] Rashidi was a Physician Assistant employed by Mid-America who provided treatment and prescriptions to Doe. *Id.*

On December 23, 2023, Doe filed a civil complaint against Rashidi and Mid-America in Lake County Circuit Court, which case is still pending. [*Id.*; *see* 45C01-2112-CT-001246.] After Mid-Century filed its motion for summary judgment in this case, Doe filed a motion to amend her complaint in the underlying case, and the motion was granted. In the amended complaint, Doe alleges that while she was a patient of Mid-America and being treated by Rashidi, he forced her to have sexual relations with him by threatening that if she didn't, he would stop prescribing the medication she needed for her opioid dependence. [DE 41-1.] She further alleges that after several months of her treatment with Rashidi, he began repeatedly showing up at her home and forcing Doe to accompany him to a Motel 6 in Hammond, Indiana, for sex. [*Id.* at 8.] Doe alleges Rashidi forced her to engage in oral sex, vaginal sex, painful anal sex, and role-playing where she pretended to be his wife, and he instructed her to use terms of endearment as if they were a couple. *Id.* Doe estimates she met with Rashidi at the

2

Motel 6 in Hammond on approximately 20 occasions. [DE 33 at 6.] Other assaults are alleged to have occurred at Mid-America's office—Doe says Rashidi kissed her, grabbed her buttocks, and grabbed her breasts during office visits. *Id.* These approximately 15 occurrences happened between May 3, 2019 and April 13, 2020. *Id.* The sexual abuse ended in June 2020. [*Id.* at 2.]

Mid-Century issued three yearly Business Owners Liability Policies to Mid-America Mental Health for the period of April 11, 2018 to April 11, 2021. [*Id.* at 3.] Each of the three yearly policies had the same material terms and conditions. *Id.* The Policy contains the following definitions: the "named insured" is Mid-America Mental Health LLC, and throughout the Policy the words "you" and "your" refer to the Named Insureds. [*Id.* at 3.] Under the subtitle "who is an insured," the policy provides that if you are designated in the Declarations as:

    c.    A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

* * *

    2.    Each of the following is also an insured:

        a.    Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture of limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

[*Id.* at 4; DE 1-2 at 11, 101, 109.]

The Policy goes on to provide that Mid-Century will pay those sums the insured

3

becomes legally obligated to pay as damages because of bodily injury caused by an occurrence or to personal injury caused by an offense arising out of your business. [DE 1-2 at 101, 118.] The Policy also contains the following "Abuse or Molestation Exclusion" which provides as follows:

> This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:
>
> **(a)** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
>
> **(b)** The negligent:
>
>     **(i)** Employment:
>     **(ii)** Investigation;
>     **(iii)** Supervision;
>     **(iv)** Reporting to the proper authorities, or failure to so report; or
>     **(v)** Retention;
>
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

[DE 1-2 at 125.]

For his part, Rashidi claims his relationship with Doe was consensual. [DE 41-1 at 6.] Rashidi had minimal experience assisting drug dependent patients. [DE 37-7 at 7.] He admitted that he gave cash to Jane Doe, bought her food, went to her house, had a romantic sexual relationship with her, and went to a motel with her multiple times. [*Id.* at 6.] Rashidi never reported his romantic relationship with Jane Doe to Mid-America. *Id.* Rashidi developed feelings for Jane Doe. *Id.* He was not familiar with the core phenomenon in psychiatry called "transference"—a phenomenon where a patient and therapist develop sexual or romantic feelings for each other. [*Id.* at 7.] Rashidi had no

4

training in the concept of transference, and Mid-America did not provide him with any training or information about the risk of "transference" occurring between a doctor and their patient. *Id.*

Mid-Century Insurance has moved for summary judgment, claiming the Policy excludes coverage for Mid-America and Rashidi for Doe's claims of sexual abuse. Specifically, it claims the abuse or molestation provision applies because the abuse happened when Doe was in the care or control of Rashidi and Mid-America. [DE 22 at 7-11.] With regard to the company, Mid-America, the insurance company claims because Doe's injuries arose from alleged negligent hiring, supervision and retention of Rashidi, coverage is excluded as to Mid-America too. [*Id.* at 12.]

## Discussion

The parties agree that the substantive law applicable to this case is the law of the State of Indiana. Under Indiana law, an insurer can "clarify its obligation by means of a declaratory judgment action," like this one. *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 902 (Ind. Ct. App. 1992).

Let's start with some basics. The interpretation of an insurance policy, like other contracts, is typically a question of law that I can resolve on summary judgment. *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243 (Ind. 2000). When interpreting an insurance policy, my goal is to ascertain and enforce the parties' intent as reflected in the insurance contract. *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009). If the policy language is clear and unambiguous, it should be given its

5

plain and ordinary meaning. *Am. States Ins. Co. v. Adair Indus., Inc.*, 576 N.E.2d 1272, 1273 (Ind. Ct. App. 1991). However, ambiguous terms in the contract are to be construed against the insurer, especially where the policy excludes coverage. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994).

Insurance policies are adhesion contracts. They are drafted by insurance companies and are basically a "take it or leave it" deal. It is for this reason that any exclusions or limitations in an insurance policy must be plainly expressed, and any doubt or ambiguity in the policy must be read in favor of the insured. *Am. Family Life Assurance Co. v. Russell*, 700 N.E.2d 1174, 1177 (Ind. Ct. App. 1998). "The exclusionary clause must clearly and unmistakably bring within its scope the particular act or omission that will bring the exclusion into play, and any doubts to the coverage under the policy shall be construed against the insurer to further the policy's basic purpose of indemnity." *Id.* An insurer bears the burden of proving that an exclusion applies. *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 725 (Ind. Ct. App. 2004).

An insurance company's duty to defend is broader than its duty to indemnify. *Seymour Mfg. Co., Inc. v. Commercial Union Ins. Co.,* 665 N.E.2d 891, 892 (Ind. 1996). An insurer is obligated to defend its insured against suits alleging facts that might fall within the coverage of the policy. *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997). "[T]here is essentially only one standard—that the allegations of the complaint, including the facts alleged, give rise to a duty to defend whenever, if proved true, coverage would attach." *Id.* Only if there is no possible factual or legal basis on

6

which the insurer might be obligated to indemnify will the insurer be excused from defending its insured.  Lee R. Russ, 14 COUCH ON INSURANCE § 200:12 (3d ed. 2007); *see also Ticor Title Ins. Co. of Cal. v. FFCA/IIP 1988 Prop. Co.*, 898 F. Supp. 633, 638-39 (N.D. Ind. 1995) (if there is even a possibility of coverage, the insurer is obligated to defend).

    The first place to look when trying to determine the insurer's duty to defend is the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation.  *Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007); *Liberty Mut. Ins. Co. v. OSI Indus., Inc.*, 831 N.E.2d 192, 198 (Ind. Ct. App. 2005).  It used to be under Indiana law that the duty to defend was "determined solely by the nature of the complaint."  *Transamerica Ins. Serv. v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991).  However, several Indiana appellate decisions have more recently veered away from the approach in *Kopko* and found that "in evaluating the factual basis of a claim and the insurer's concomitant duty to defend, this court may properly consider the evidentiary materials offered by the parties to show coverage."  *Wayne Twp. Bd. of Sch. Comm'rs v. Ind. Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995) (citing *Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991)).

    Evidently, the Indiana Supreme Court agrees with this alternative approach because, after *Kopko*, it too has considered extrinsic, designated evidence when analyzing an insurer's duty to defend.  *See Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1291 (Ind. 2006).  As such, I have considered the relevant designated evidence when determining whether Mid-Century owes a duty to defend.  *See Continental Ins. Co.*

7

*v. George J. Beemsterboer, Inc.*, 148 F.Supp.3d 770, 781-82 (N.D. Ind. 2015) (analyzing relevant case law and finding it appropriate to consider extrinsic evidence in assessing an insurer's duty to defend).

Finally, an insurer must defend an action even if only a small portion of the conduct alleged in the complaint falls within the scope of the insurance policy. *See Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994). So "[i]f the policy is otherwise applicable, the insurance company is required to defend even though it may not be responsible for all of the damages assessed." *Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1267 (Ind. Ct. App. 2010) (citation omitted). In other words, in for a penny, in for a pound.

**I.     Daud Rashidi**

Although properly served, Rashidi has neither appeared nor defended against this declaratory judgment action. There has been a clerk's entry of default against Rashidi [DE 25], but Mid-Century has not moved for a default judgment against him. Instead, it seeks summary judgment against Rashidi by arguing that it owes no duty to defend or indemnify Rashidi because the molestation exclusion in the Policy. In response, Mid-America claims this exclusion is "awkwardly worded and ambiguous and therefore must be construed against Plaintiff." [DE 32 at 3.] I disagree. On its face, the language is unambiguous. It provides that insurance does not apply to damages arising out of "[t]he actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured." [DE 1-2 at 125.] This plainly reads

8

that if any person abuses another who is within the care, custody, or control of the insured, the exclusion is applicable – in other words, the abuse must happen while the victim is in the care, custody or control of the insured. *See, e.g., Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 578-79 (Ind. 2013) (finding an abuse and molestation exclusion was not ambiguous, and noting the real question was whether the evidence was sufficient to hold as a matter of law that the victim was in the care, custody, or control of the hotel); *see also Valley Forge Ins. Co. v. Field*, 670 F.3d 93, 98 (1st Cir. 2012) (finding abuse or molestation exclusions "have generally been found to be unambiguous in the face of attacks on various parts of the language used" and citing cases from across the nation finding the provision unambiguous).

In this case, while Mid-America contends the provision is ambiguous, it also simultaneously insists the proper reading of the provision is that the person must be under the "care, custody or control" of the insured at the time of the incident for the exclusion to apply (which, ironically, *is* the plain meaning of the Policy language). What Mid-America is really contending is that Doe was not "in the care, custody or control" of the insured while the abuse happened in this case, so the exclusion shouldn't apply. However, for the reasons set forth below, coverage is inapplicable. Even though this is a fact-sensitive inquiry, "that does not necessarily preclude summary judgment when the material facts are undisputed." *Holiday Hospitality*, 983 N.E.2d at 579-80.

Let's take a step back and look at the allegations in this case. While the original complaint alleged a series of intentional torts against Rashidi, Doe alleges in her

9

amended complaint (which is controlling) negligence against Rashidi, negligent infliction of emotional distress, negligence per se against Rashidi, and intentional infliction of emotional distress. [DE 1-1; 41-1.] Both Doe and Mid-America admitted in their answers to the complaint that "Jane Doe was in the care of Mid-America from approximately February 2018 to approximately June 2020 for treatment of opioid dependence" and that "during the time that Doe was a patient at and in the care of Mid-America from approximately February 2018 to approximately June 2020, Doe had appointments at Mid America approximately every two weeks for follow ups and to obtain refills on her suboxone medication." [DE 23 at 1; DE 15 at 3; DE 16 at 2-3.] No one disputes that the alleged sexual abuse occurred during the general time frame that Doe was being treated by, and was under the general care, of Rashidi and Mid-America. Moreover, it is clear that Rashidi held control over Doe during this period, as he was the one who had the power to prescribe her medication (and allegedly used this power as leverage — i.e. unless Doe yielded to his sexual advances, her prescriptions would not be filled).

It is undisputed that at least some of the alleged sexual abuse took place in the offices of Mid-America. However, both Doe and Mid-America point to the fact that "[m]uch of the abuse allegedly occurred outside of appointments and not on Mid-America's premises" therefore, they reason, the abuse didn't *really* happen while Doe was within the "care, custody or control" of an insured. [DE 32 at 5; *see also* DE 37 at 12.] In other words, defendants believe because at least some of the alleged abuse took place

10

at the Motel 6 in Hammond (not on Mid-America's premises), the abuse and molestation exclusion is inapplicable because Doe was not really in the "care, custody or control" of an insured at that time.  As I explain below, though, Indiana courts have used the ordinary meanings when interpreting these terms, and have given them their broad, every day application which I believe applies in this case.

In *Holiday Hospitality*, the Indiana Supreme Court looked at similar contractual language—including the phrase "care, custody or control"—in determining whether a molestation exclusion applied.  983 N.E.2d 574.  In that case, a minor was staying with his friend's mother at a hotel.  The minor himself was not a registered guest at the hotel, but his friend's mother was (she rented the hotel room).  *Id.* at 580. During their stay, a hotel employee entered the locked hotel room at night and molested the minor.  *Id.* at 576.  The insured argued that the minor was under the care, custody or control of the hotel, so the exclusion applied.  In analyzing whether the minor was in the care, custody or control of the hotel, the Court reasoned:

> Webster's defines "care" in this context as "the function of watching, guarding, or overseeing."  *Webster's II New College Dictionary 168* (1995).  "Custody" is defined as "the act or right of guarding, esp. such a right granted by a court."  *Id.* at 280.  "Control" means "to exercise authority or influence over" or "to hold in restraint."  *Id.* at 246.  Black's Law Dictionary is similar, defining "care" as "under the law of negligence or of obligations, the conduct demanded of a person in a given situation," *Black's Law Dictionary 240* (9th ed. 2009), defining "custody" as "the care and control of a thing or person for inspection, preservation, or security," *id.* at 441, and "control" as "to exercise power or influence over," *id.* at 378.

*Id*. at 579-580.  The Court went on to say:

> We think these are reasonable definitions for these terms as they are used in the insurance policy at issue. We also note that the policy lists the three terms in the disjunctive, thus not requiring all three to be satisfied for coverage to be excluded. The question, then, is whether the designated evidence is sufficient to hold, as a matter of law, that R.M.H. was in the "care," "custody," or "control" of Holiday Inn Express, Megha, or Holiday Hospitality.

*Id*. at 579. The Court determined that the minor victim was in the "care" of the hotel at the time the molestation occurred, because he was a guest in the hotel (even though he was staying with his mother's friend who was the paying party), in a locked guest room. *Id.* at 580. Thus, the exclusion applied and the court granted summary judgment. In this case, even though some of the abuse occurred off of Mid-America's premises, I still think that Doe was in the "care of" Rashidi. It is undisputed that Doe was receiving on-going treatment from Rashidi during this time frame and that their relationship was one of doctor-patient.

This conclusion that the abuse or molestation exclusion precludes coverage is shored up by the decision in *Valley Forge*. That case involved a materially identical molestation or abuse provision, and the court found the exclusion applied where a child had been receiving bi-weekly outpatient therapeutic services, and the care givers should have known physical injuries sustained by the child were the result of systematic abuse by her parents. 670 F.3d at 96-98. The Court found the child was under the "care" of the treatment facility even though the physical abuse was occurring at home at the hands of her parents. *Id.* at 99-102. Yes, the facts are quite different in *Valley Forge*, but this case does show how expansively the term "in the care of" can be

12

construed.

The undisputed facts also show that Doe was in the "control" of Rashidi at the time of the abuse. As the *Holiday Hospitality* Court recognized, control means to exercise authority or influence over. 983 N.E.2d at 579. Doe was vulnerable at this time—she was in need of counseling and recovering from opioid addition and dependent upon getting her refills for her suboxone medication. Rashidi had the power to give (or withhold) this lifesaving medication and, according to her allegations, told her if she didn't submit not only would he not give her the medication, but he would have her blacklisted from the medical community as well. This imbalance of power was present in the offices of Mid-America, but it was present outside as well. What leverage would Rashidi have when he showed up at Doe's house, other than the ability to control her physical and mental health, which is of course what he used to allegedly coerce her to have sex with him? As such, Doe was in the "control" of Rashidi during the overarching time of her sexual abuse.

This case has many similarities to *Gemini Insurance Company v. Earth Treks, Inc.*, 260 F.Supp.3d 467 (D. Md. 2017), which also found that an abuse and molestation coverage limitation applied. There, two coaches at a rock-climbing gym sexually abused a minor climber. While some of the sexual activity occurred at the rock climbing gym, one instructor also led a team trip and sexually assaulted the climber in his hotel room. *Id.* at 472. Some sexual acts also happened at the minor's house. *Id.* at 473. The Court found that even though some of the abuse happened outside of the

13

gym, it all happened within the context of the student-teacher relationship, reasoning "while the other acts were not committed on the Earth Treks premises, both [coaches] were 'able to exert influence' over [the victim] by virtue of their positions." *Id.* at 481. Therefore, the court found she was in the "care, custody or control" of the gym, and the abuse or molestation exclusion applied. Similarly, Rashidi was able to exert influence over Doe due to his position as her physician, and the abuse that she suffered (even that outside of the health office), all occurred when she was in the care, custody or control of Mid-America.

## II.     Mid-America Mental Health

The second part of the abuse or molestation exclusion (part b) specifically applies to the negligent employment, investigation, supervision, and retention of a person whom an insured "is or ever was legally responsible and whose conduct would be excluded" by part (a). [DE 1-2 at 125.]  It is undisputed that Rashidi was employed by Mid-America as a physician's assistant. Therefore, under Indiana law, Mid-America was legally responsible for his conduct while he was in the scope of employment or while he was performing acts sufficiently associated with his duties. *See Yost v. Wabash College*, 3 N.E.3d 509, 518 (Ind. 2014) ("Vicarious liability is a legal fiction by which a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer . . . Under this doctrine of imputed liability, an employer who is not liable because of his own acts, can be held liable for the wrongful acts of his employee which

14

are committed within the scope of employment.").

Doe alleges that Mid-America was negligent because it owed a duty "to properly hire, train and supervise its employees," and it "failed to properly train Rashidi, including training on the phenomenon of transference in the context of psychotherapy and addiction treatment." [DE 41-1 at 20.] Doe also alleges Mid-America "failed to supervise and train Defendant Rashidi in his position of trust and authority as a healthcare provider." [*Id.* at 22.]

Doe claims the categories of negligence set forth in the Policy's abuse or molestation exclusion do *not* exclude claims for negligent training. [DE 37 at 13.] I fail to see why. First of all, the abuse and molestation provision excludes injuries "arising from" the abuse by anyone of any person while in the care, custody or control of any insured. [DE 1-2 at 125.] I have already held that this exclusion prevents coverage for Rashidi's acts. Moreover, the exclusion goes on to say that it also applies to the negligent employment, supervision, retention or investigation of employees who commit acts of molestation. *Id.* This means, under a plain reading of the policy's exclusion, there is no coverage for any act of alleged negligence by Mid-American in its employment of Rashidi.

What's more, it is neither here nor there that the words "negligent training" are not specifically mentioned in the exclusion. This is because the Indiana Supreme Court has referred to the "tort of negligent hiring, training and supervision" as one tort. *Branscomb v. Wal-Mart Stores E., L.P.*, 165 N.E.3d 982, 985 (Ind. 2021). Thus, exclusions

15

for injuries that arose from an employer's negligent "employment" or "supervision" of a person also encompass training.

Doe's exact argument was addressed and rejected by the Court in *Tolson v. The Hartford Fin. Servs. Group, Inc.*, 278 F.Supp.3d 27, 35 (D.C. 2017). In *Tolson*, a victim was molested during a massage, and Massage Escape had a similar insurance contract with a sexual-abuse exclusion which disclaimed coverage for injuries arising out of the injured's employment of or failure to supervise a person whose conduct fell within the policy's definition of sexual abuse. *Id.* The victim "urge[d] her claim for negligent <u>training</u> [wa]s not covered by the sexual-abuse exclusion, because the exclusion does not mention training, and because exclusions from coverage are to be strictly construed." *Id.* (emphasis in original.) The court reasoned, while the claims for negligent supervision, hiring, and training alleged different breaches of duties Massage Escape owed to her, each alleged breach resulted in the same injury - the sexual assault of the victim during the massage. *Id.* Because the victim did not dispute the assault was "sexual abuse" within the meaning of the policy, all of the plaintiff's negligence claims seeking to recover for an injury arising out of the sexual abuse therefore fell within the policy's sexual-abuse exclusion. [*Id.* at 36.] This was so even for the plaintiff's claims for negligence per se because she relied on an injury arising out of sexual abuse. *Id.* I agree with this reasoning. Because all of Doe's injuries arise out of Rashidi's sexual abuse, the claim of negligent training against Mid-America is still excluded from coverage.

There is another problem with Mid-American's argument aside from the plain reading of the exclusion. Indiana courts analyze the "efficient and predominate cause" of the injuries to determine whether the claims are subject to policy exclusions. For example, the Indiana Supreme Court recently looked at this "efficient and predominant cause" analysis in a case where it found the efficient and predominate cause of injuries was the drunk driving of a person who had been served alcohol by the insured, and an exclusion for liability for causing or contributing to intoxication applied to the claims of negligence for allowing the patron to leave the bar. *See Ebert v. Illinois Cas. Co.*, 188 N.E.3d 858 (Ind. 2022).

This "efficient and predominant cause" analysis has been applied in a myriad of situations by a variety of Indiana courts in finding that a policy exclusion applies. *See e.g. Wright v. American States Ins. Co.*, 765 N.E.2d 690, 697 (Ind. Ct. App. 2002); *see also Illinois Farmers Ins. Co. v. Wiegand*, 808 N.E.2d 180, 190 (Ind. Ct. App. 2004) (holding policy containing a motor vehicle exclusion barred coverage for a negligent supervision claim because the "immediate and efficient cause" of the minor's injuries and the claims arising from those injuries was the minor's use of the ATV, and "without the use of the ATV, there would be no claim for negligent supervision"); *Westfiled Ins. Co. v. Hill*, 790 F.Supp.2d 855, 866 (N.D. Ind. 2011) (finding homeowners insurance policy containing an exclusion for sexual molestation and physical abuse precluded coverage of negligent supervision and failure to warn claims where "the efficient and predominant cause of Doe's injuries was Comford's sexual molestation and physical abuse.").

17

Here, the efficient and predominate cause of Doe's injuries has to be the sexual abuse while she was generally being treated by Rashidi, and these alleged injuries are excluded by Paragraph (a) of the Abuse and Molestation exclusion even if there are additional allegations that Mid-America negligently hired, employed, supervised, or trained Rashidi. Without Rashidi's actions and sexual abuse of Doe, there wouldn't be any claims against Mid-America. In other words, there would be no negligence claims against Mid-America but for Rashidi's conduct. Therefore, Paragraph (a) of the exclusion applies to the claims that Mid-America negligently trained Rashidi regarding the transference phenomenon.

In sum, all of the claims against Rashidi and Mid-America are excluded from coverage. When the nature of the claim and underlying factual basis of the complaint is obviously not covered by the policy of insurance, there is no duty to defend. *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind. Ct. App. 1980). As such, summary judgment is appropriate.

## Conclusion

For the foregoing reasons, Mid-Century Insurance Company's Motion for Summary Judgment [DE 21] is GRANTED. As a matter of law, Mid-Century Insurance Company owes no duty to defend or indemnify Mid-America Mental Health LLC or Daud Rashidi against the claims made against them by Jane Doe. The Clerk is ORDERED to CLOSE this case.

**SO ORDERED**.

ENTERED: May 17, 2024

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
